Filed 12/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B306460 |
|     Plaintiff and Respondent, | Los Angeles County Super. Ct. No. PA089854 |
|     v. | |
| ALBERIC ROLAND NAULT, | |
|     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed as modified.

Richard B. Lennon and Jennifer Peabody, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After four convictions for drunk driving, Alberic Roland Nault got drunk and tried to pass an 18-wheeler on a narrow

road.  His pickup hit an oncoming car and killed its driver.  While Nault was unconscious from the crash, police took a warrantless sample of his blood.  Nault argues this violated the Fourth Amendment.  We affirm but direct the trial court to stay a second sentence under Penal Code section 654.

Nault has a history of driving under the influence.  At his 2020 trial, he stipulated to four of these convictions between 2000 and 2009.  As a condition of probation, in 2001 he took a morgue program designed to snap him into focus.  He also completed two other court-ordered alcohol awareness programs:  one in 2006 and another in 2013.  These sessions described the potential consequences of drunk driving, including killing people and murder charges.

On August 11, 2017, a park ranger found Nault digging his pickup out of beach sand.  Nault was stumbling about and he sounded and smelled drunk.  He refused field sobriety tests and a blood test.  He told the ranger to arrest him:  "I'm going to fail those tests.  I'm going to get a DUI."  He said his blood alcohol content was over 0.08 percent because he drank a Four Loko.  The ranger arrested Nault and impounded his truck.  Authorities suspended Nault's license.

On October 27, 2017, Nault used deception to get his truck out of impound.  The tow yard would not release it to him while his license was suspended, so Nault paid a stranger $100 to show the tow yard a valid license that did not belong to Nault.  Once the stranger got the truck released, Nault drove it away.

That same day at 7:00 p.m., Laurentino Doval Carlos was driving his 18-wheeler on a two-lane road with a 55 mile-per-hour speed limit.  Doval was behind another 18-wheeler.  Both were traveling about 50 miles per hour.  It was dark.

2

In his rear view, Doval saw Nault's headlights. Nault was trying to pass Doval at 70 miles per hour. Doval slowed to let him pass. The truck ahead of Doval blocked the view.

In the opposite lane, a Honda Civic appeared, driving towards Nault. Seeing Nault's pickup coming straight at her in her lane, the Honda driver locked her brakes. Nault's pickup hit the Honda, crushing the driver to death. Both cars burst into flames.

Doval found the Honda driver dead and Nault unconscious in his driver's seat. Nault smelled strongly of alcohol. Doval pulled Nault out of the burning pickup.

California Highway Patrol Officer Carlos Burgos-Lopez arrived at the scene at 7:28 p.m. Nault now was semiconscious in an ambulance. His pants were soaked with alcohol. Burgos-Lopez asked Nault what he had been drinking and Nault said, "Beer." His speech was "thick."

Nault's injuries prevented him from giving Burgos-Lopez a complete statement. His blood pressure was very low, and medical personnel were giving him oxygen and intravenous fluids. He had injured his abdomen and leg and would be hospitalized for days.

Burgos-Lopez went to get the breathalyzer from his cruiser. When he returned, medics were moving Nault to a helicopter for emergency evacuation, which prevented Burgos-Lopez from using the breathalyzer.

Burgos-Lopez stayed at the scene to investigate. He determined the accident's cause was Nault's driving under the influence at an unsafe speed and trying to pass with too little room. The long skid marks behind the Honda meant heavy braking. There were no skid tracks behind Nault's pickup.

Burgos-Lopez then followed Nault to the hospital.

Officer Riley Beckinger got a call at 8:55 p.m. assigning him the investigation. He arrived at the hospital at 9:05 p.m. and found the unconscious Nault. Burgos-Lopez said Nault was under the influence. Beckinger smelled alcohol on Nault, and the smell was strong. The medical staff said they would take Nault into surgery soon. Beckinger knew he had no time to get a warrant before the surgery, so he asked a nurse to draw Nault's blood straight away. Beckinger said he would get a warrant thereafter. A nurse took two blood samples, at 9:11 and 9:12 p.m.

Beckinger assigned another officer to get a warrant while he stayed at the hospital to gather information. Beckinger received the warrant that night and delivered it to the hospital the next morning.

Analysis of the blood revealed that at 9:11 p.m., about two hours after the crash, Nault's blood alcohol content was 0.14 percent. That was about twice the legal limit.

The trial court heard Nault's challenge to the blood evidence. Nault argued the analysis was inadmissible because officers got the samples without a warrant. The court held exigent circumstances justified the blood draws.

A jury convicted Nault of second degree murder (Pen. Code, § 187, subd. (a)) (count 1) and gross vehicular manslaughter while intoxicated (*id*., § 191.5, subd. (a)) (count 2). Nault pleaded no contest to driving a vehicle with a suspended license (Veh. Code, § 14601.5, subds. (a) & (d)(2)) (count 3) and admitted four prior convictions for driving under the influence (Veh. Code, § 23152, subds. (a) & (b); see Pen. Code, § 191.5, subd. (d)).

4

The court sentenced Nault to 15 years to life in state prison for count 1, with a concurrent term of 15 years to life for count 2, and to one year in county jail for count 3.

Nault argues the warrantless blood draw violated his Fourth Amendment right against an unreasonable search.  We independently review the constitutionality of the search.  (*People v. Meza* (2018) 23 Cal.App.5th 604, 609 (*Meza*).)  Federal law governs us.  We are not permitted a state law departure.  (See *People v. Souza* (1994) 9 Cal.4th 224, 232–233.)

A blood draw is a search governed by the Fourth Amendment.  (*Birchfield v. North Dakota* (2016) 579 U.S. 438, __ [136 S.Ct 2160, 2173].)  A warrantless blood draw is presumed unreasonable unless justified by a recognized exception.  (U.S. Const., 4th Amend.; *Missouri v. McNeely* (2013) 569 U.S. 141, 148.)  One such exception is exigent circumstances, which arise when an emergency makes law enforcement needs so compelling that a warrantless search is objectively reasonable.  (*McNeely*, at pp. 148–149.)

Circumstances are exigent when blood alcohol evidence is dissipating, as it always is, and a pressing health, safety, or law enforcement need takes priority over a warrant application.  (*Mitchell v. Wisconsin* (2019) __ U.S. __, __ [139 S.Ct. 2525, 2537] (plur. opn. of Alito, J.) (*Mitchell*); *Schmerber v. California* (1966) 384 U.S. 757, 770–771.)  The fact the human body continuously metabolizes alcohol is not enough.  (*Mitchell*, at p. 2537.)

When a driver is *unconscious*, the general rule is a warrant is not needed.  (*Mitchell, supra,* 139 S.Ct. at p. 2531.)  The Fourth Amendment "almost always" permits a warrantless blood test when police officers do not have a reasonable opportunity for a breath test before hospitalization.  (*Id.* at p. 2539.)

The general rule governs here.  Exigent circumstances justified this blood draw.

Nault created the exigency by injuring himself badly.  He was unconscious and had to be helicoptered to surgery.  Whoever called for the helicopter judged the situation dire.  Nault does not suggest this decision was a manipulation.  Caring for Nault's medical need left no time for a breath test.

Nault cites the *Meza* decision.  (*Meza, supra*, 23 Cal.App.5th at pp. 611–612.)  *Meza* was pre-*Mitchell*.  There was no airlift of an unconscious person.

Nault also contends, and the prosecution agrees, his sentence for count 2 should be stayed pursuant to Penal Code section 654, which bars multiple punishments for the same act.  We concur.  (See *People v. Sanchez* (2001) 24 Cal.4th 983, 988, 992.)

## DISPOSITION

We direct the trial court to stay the sentence for count 2 pursuant to Penal Code section 654 and to forward a corrected copy of the abstract of judgment to the Department of Corrections and Rehabilitation.  No hearing or presence of parties is necessary.  We affirm the judgment in all other respects.


                                        WILEY, J.

We concur:


        GRIMES, Acting P. J.          HARUTUNIAN, J. *

---

*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.